IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-01130-MJW

VALERIE A. MARTINEZ-BUTLER

Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

Defendant.

---

## ORDER OF REMAND TO THE COMMISSIONER FOR FURTHER PROCEEDINGS

---

**MICHAEL J. WATANABE**
**United States Magistrate Judge**

Upon consent of the parties and the Order of Reference Pursuant to 28 U.S.C. §
636(c) issued by Judge Philip A. Brimmer on August 25, 2015 (Docket No. 25), this civil
action was referred to the Magistrate Judge for all purposes including entry of final
judgment.

In this case, plaintiff, Valerie A. Martinez-Butler, challenges the final decision of
the Commissioner of Social Security ("Commissioner") denying plaintiff's applications for
disability insurance benefits and Supplemental Security Income pursuant to Titles II and
XVI of the Social Security Act "(the "Act"), 42 U.S.C. §§ 401-433, 1381-1383c.
Jurisdiction is proper under  section 205(g) of the Social Security Act, 42 U.S.C. §
405(g) (the "Act").

On her applications, plaintiff alleged disability as of September 9, 2009.  (Docket
Nos. 11-5 at 2, 5).  A video hearing was conducted by Administrative Law Judge ("ALJ")

Amita Tracy on September 14, 2012.  Plaintiff appeared with counsel and testified.

Testimony was also heard from a vocational expert ("VE"), Bernard S. Preston.

Following the hearing, plaintiff's applications were denied in a written decision dated

October 3, 2012 (Docket No. 11-2 at 18-33).  The Appeals Council denied plaintiff's

Request for Review on February 28, 2014 (Docket No. 11-2 at 2-5), and thus the ALJ's

decision is the final decision of the Commissioner.

Plaintiff now appeals that final decision.  More specifically, plaintiff raises the

following errors the ALJ allegedly committed in rendering his decision: (1) the ALJ failed

to assess the treating physician's opinion properly; (2) the residual functional capacity

("RFC") finding is not stated on a function-by-function basis; (3) the ALJ's RFC finding is

not supported by VE testimony; and (4) the ALJ improperly rejected the opinion of the

treating mental health counselor.

The court has very carefully reviewed the Complaint (Docket No. 1), defendant's

Answer (Docket No. 10), plaintiff's Opening Brief (Docket No. 14), defendant's

Response Brief (Docket No. 19), plaintiff's Reply (Docket No. 20), the entire case file

including the Administrative Record ("AR") (Docket No. 11), and the applicable case

law, statutes, and regulations.  The court adopts and incorporates the Statement of the

Facts section contained in the defendant's Response Brief (Docket No. 19).

The court now being fully informed makes the following findings, conclusions of

law, and Order.  The court finds that the matter should be remanded to the

Commissioner for further proceedings.

## STANDARD OF REVIEW

This court's review of the ALJ's determination is limited to determining whether

the ALJ's decision is supported by substantial evidence and whether the Commissioner, through the ALJ, applied the correct legal standards.  See Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  It requires more than a scintilla, but less than a preponderance."  Id. (quoting Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007)).  "Evidence is not substantial if it is overwhelmed by other evidence in the record."  Grogan v. Barnhart, 399 F.3d 1257, 1261-62 (10th Cir. 2005). In reviewing the record and the arguments of counsel, the court does not reexamine the issues de novo, Sisco v. United States Dep't of Health & Human Servs., 10 F.3d 739, 741 (10th Cir. 1993), nor does it re-weigh the evidence or substitute its judgment for that of the Commissioner, Salazar v. Barnhart, 468 F.3d 615, 621 (10th Cir. 2006).  Thus, even when some evidence may have supported contrary findings, the court "may not displace the agency's choice between two fairly conflicting views," even if the court may have "made a different choice had the matter been before it de novo."  Oldham v. Astrue, 509 F.3d 1254, 1257-58 (10th Cir. 2007).  This court has applied this standard to each of the challenges raised by plaintiff in this appeal.

An individual "shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).  The Commissioner has developed a five-step sequential evaluation process for determining whether a claimant is disabled under the Act.  See Williams v. Bowen, 844 F.2d 748, 750-52 (10th Cir. 1988)

4

(describing the five steps in detail).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Id. at 750.  "The claimant bears the burden of proof through step four of the analysis."  Neilson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993).  At the fifth step, the burden shifts to the Commissioner to show that the claimant can perform work that exists in the national economy.  Id.

Here, at step one, the ALJ determined that the plaintiff has not engaged in substantial gainful activity since September 9, 2009, the alleged onset date.  (Docket No. 11-2 at 23).  The ALJ noted that plaintiff initially explained she quit working in August 2010 because she divorced her husband, and she told an examining source that she was fired from her job in 2009 when she was accused of theft.  (Docket No. 11-2 at 23).  Furthermore, the ALJ noted plaintiff had $1,016 in self-employment earnings in 2010, but it was not clear over what length of time plaintiff worked and made those earnings.  (Docket No. 11-2 at 23-24).  For purposes of the ALJ's decision only, plaintiff's self-employment earnings were considered not commensurate with substantial gainful activity in order that the ALJ could continue the sequential evaluation process. (Docket No. 11-2 at 24).

At step two, the ALJ found that the plaintiff has severe impairments, namely, history of degenerative joint disease of the bilateral knees, status-post total right knee arthroplasty, obesity, an affective disorder, mild degenerative disease of the lumbar spine, and an anxiety disorder.  (Docket No. 11-2 at 24).

Next, at step three of the sequential evaluation process, the ALJ specifically and in great detail analyzed plaintiff's various alleged impairments and the applicable

Listings and found that the plaintiff does not have an impairment or combination of impairments that meet or medically equal the severity of one of the impairments contained in the Listings.  (Docket No. 11-2 at 24-27).

At step four, the ALJ found that the plaintiff has the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that she can stand or walk up to four hours, sit up to six hours, and can occasionally climb stairs and ramps, but never climb ladders, ropes, or scaffolding.  In addition, she can occasionally kneel and crouch, frequently balance and stoop, but never crawl.  Furthermore, she should not be exposed to extreme cold or hazards, such as moving machinery and unprotected heights.  Also, she retains the abilities to engage in simple, routine tasks requiring no interaction with the public.  (Docket No. 11-2 at 27-30).   The ALJ then determined that the plaintiff is unable to perform any past work.  (Docket no. 11-2 at 31-32).

Furthermore, the ALJ found that the plaintiff was age 49 and a "younger individual" on the alleged onset date and subsequently changed age category to "closely approaching advanced age." (Docket No. 11-2 at 32).  In addition, she has at least a high school education and is able to communicate in English.  (Docket No. 11-2 at 32).  Transferability of job skills was found to not be material to the determination of disability because using the Grids as a framework supports a finding that plaintiff is "not disabled" whether or not plaintiff has transferable job skills.  (Docket No. 11-2 at 32).  Considering plaintiff's age, education, work experience, and RFC, the ALJ found that there are jobs that exist in significant numbers in the national economy that plaintiff can perform.  In making this finding, the ALJ considered the testimony of the VE who had testified that given all of these factors, the individual would be able to perform the

6

requirements of representative unskilled occupations such as mail clerk, a routing clerk, and an assembler.  (Docket No. 11-2 at 32).  Consequently, the ALJ determined that the plaintiff has not been under a disability, as defined in the Act, from September 9, 2009, through the date of the decision, October 3, 2012.  (Docket No. 11-2 at 33).

## ANALYSIS

**Weighing of Medical Source Evidence.**  Plaintiff asserts that the ALJ failed to assess the treating physician's opinion properly and improperly rejected the opinion of the treating mental health counselor.

"Generally an ALJ should give greater weight to the opinion of a treating physician than to that of a consultant or non-examining physician, . . . but opinions from treating physicians are not dispositive . . . ."  Barnhill-Stemley v. Colvin, 607 Fed. Appx. 811, 816 (10th Cir. Apr. 23, 2015) (citations omitted).  "A treating physician's opinion must be given controlling weight if it is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record."  Knight ex rel. P.K. v. Colvin, 756 F.3d 1171, 1176 (10th Cir. 2014) (internal quotation marks omitted).

"[I]n evaluating the medical opinions of a claimant's treating physician, the ALJ must complete a sequential two-step inquiry, each step of which is analytically distinct."  Chrismon v. Colvin, 531 Fed. Appx. 893, 900 (10th Cir. Aug. 21, 2013) (citing Krauser v. Astrue, 638 F.3d 1324, 1330 (10th Cir. 2011)).  "The initial determination the ALJ must make with respect to a treating physician's medical opinion is whether it is conclusive, i.e., is to be accorded controlling weight, on the matter to which it relates."  Krauser, 638

F.3d at 1330.  "[A]t the second step in the analysis, the ALJ must make clear how much

weight the opinion is being given (including whether it is being rejected outright) and

give good reasons, tied to the factors specified in the [applicable] regulations for this

particular purpose, for the weight assigned."  Id.  If this procedure is not followed, a

remand is required.  Id.

> The factors to be considered are:
>
> (1) the length of the treatment relationship and the frequency of the
> examination; (2) the nature and extent of the treatment relationship,
> including the treatment provided and the kind of examination or testing
> performed; (3) the degree to which the physician's opinion is unsupported
> by relevant evidence; (4) consistency between the opinion and the record
> as a whole; (5) whether or not the physician is a specialist in the area
> upon which an opinion is rendered; and (6) other factors brought to the
> ALJ's attention which tend to support or contradict the opinion.

Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004) (quoting Watkins, 350 F.3d

at 1301).  The ALJ need not explicitly discuss each factor, see Oldham, 509 F.3d at

1258, but must be sufficiently specific to permit meaningful review.  Giuliano v. Colvin,

577 Fed. Appx 859, 862 (10th Cir. Sept. 2, 2014).

Opinion of Kent Lofley, D.O.  Here, plaintiff first asserts that the ALJ did not

properly assess treating physician Dr. Lofley's opinion.   With regard to this opinion, the

ALJ stated the following:

> Treating source Kent Lofley, D.O., completed a medical source statement
> in September 2012 (Exhibit 19F).  He indicated that the claimant could lift
> and carry twenty pounds occasionally and ten pounds frequently, stand or
> walk for about three hours, and sit without limitation (Exhibit 19F at 2).  He
> opined that the claimant would need to shift at will from sitting, standing, or
> walking and needed to use a cane (Exhibit 19F at 2-3).   Dr. Lofley
> indicated that the claimant could never climb stairs or ladders, but
> otherwise had occasional postural limitations (Exhibit 19F at 3).  He
> anticipated that the claimant would be absent from work about once a
> month because of her impairments or treatment (Exhibit 19F at 4).  He

wrote that these limitations began in approximately August 2011 (Exhibit 19F at 4). Partial weight is given to Dr. Lofley's opinion. There is insufficient evidence that the claimant requires a cane to ambulate effectively or that she needed it for more than a year after her total knee replacement. On the other hand, the [RFC] above is not entirely inconsistent with his opinion.

(Docket No. 11-2 at 29-30).

In her argument regarding Dr. Lofley's opinion, plaintiff notes that he opined that due to plaintiff's knee pain, she could lift and carry twenty pounds occasionally and ten pounds frequently; could stand and walk for three hours per day; could sit for 90 minutes before needing to change position; required the use of an assistive device to ambulate, could occasionally twist, stoop, crouch, and use foot controls; and would be absent from work once per month. (Administrative Record ["AR"] 354-56). Plaintiff further notes that the ALJ afforded Dr. Lofley's opinion only partial weight because "[t]here is insufficient evidence that the claimant requires a cane to ambulate efffectively or that she needed it for more than a year after her total knee replacement." (AR 28-29).

Plaintiff asserts the ALJ's assessment of Dr. Lofley's opinion is error for several reasons. First, she contends that the ALJ did not perform the two-step analysis for assessing a treating physician's opinion. More specifically, she claims the ALJ did not perform the first step - he allegedly did not assess Dr. Lofley's opinion for controlling weight. She claims this is error because the ALJ's reason for reducing the weight given to Dr. Lofley's opinion essentially boils down to his opinion regarding plaintiff's need to use a cane is unsupported by the evidence. (AR 28). Plaintiff claims this is merely a reason to deny controlling weight but is not a reason to reject the opinion. (Docket No.

9

14 at 27, citing 20 C.F.R. § 404.1527(c)(2); <u>Krauser v. Astrue</u>, 638 F.3d 1324, 1330

(10th Cir. 2011)).  According to plaintiff, the ALJ must separately weigh the opinion, at

the second step of the analysis, using the factors enumerated in 20 C.F.R. §

404.1527(c), which step she asserts is distinct from the first step; the ALJ's reasons for

denying controlling weight cannot be the basis for denying other weight at the second

step.  Plaintiff asserts that "[t]he ALJ failed to assess the opinion for controlling weight

resulting in a defective reduction in weight at the second-step [sic] of the analysis.

Without properly assessing the first step, the ALJ erred at the second step."  (Docket

No. 14 at 28).

        This court agrees with plaintiff's argument.  A review of the ALJ's discussion of

Dr. Lofley's opinion, quoted above, clearly shows that the ALJ did not conduct the

requisite two-step inquiry and did not provide a sufficiently specific discussion of the

factors detailed above to permit meaningful review.  It appears the ALJ merely

collapsed the two-step inquiry into a single point, finding that "[p]artial weight is given to

Dr. Lofley's opinion."  (Docket No. 11-2 at 29).  She then merely addressed Dr. Lofley's

opinion that plaintiff needs to use a cane to ambulate effectively.  While it is true that the

ALJ's stated RFC finding is not entirely inconsistent with the limitations reported by Dr.

Lofley, the ALJ did not adequately explain her reasoning for the difference between her

RFC findings and Dr. Lofley's assessment.  Given that in this case the plaintiff would be

found to be disabled under the Grid if she was limited to sedentary work, the RFC

findings in this case are especially significant.

        In addition, plaintiff correctly notes that the ALJ failed to account for another

limitation set forth by Dr. Lofley, namely, that plaintiff would be absent from work about

once a month.  On remand the ALJ should address this work limitation and if found credible, include it in any hypothetical posed to a VE.

Finally, the plaintiff claims the ALJ erred by rejecting Dr. Lofley's opinion that plaintiff requires a cane to ambulate.  The ALJ found that there was "insufficient evidence" that plaintiff requires a cane to ambulate effectively or that she needed it for more than a year after her total knee replacement.  Plaintiff argues that is an invalid reason to reject that portion of the doctor's uncontroverted opinion and that the ALJ's finding is simply unsupported by substantial evidence in the record.  Furthermore, she contends that the ALJ cannot insist on corroborating evidence for every factual statement made in a treating physician's report.

The court finds that the ALJ did not adequately explain why she found there was insufficient evidence to support the doctor's opinion regarding the use of a cane.  In the Response Brief the Commissioner argues that the ALJ's finding regarding the cane is borne out by the record.  The Commissioner notes that although Dr. Lofley and plaintiff's knee surgeon, Dr. Taylor, directly addressed plaintiff's gait, station, and knee functioning in their treatment and examination notes, neither of them reported that plaintiff was using a cane at any of her visits, nor did they indicate that plaintiff needed to use a cane in order to ambulate effectively.  (Docket No. 19 at 10) (citing AR 237, 267, 292-96, 298, 339-40, 342-43, 346, 311).  In addition, the Commissioner points out that the discharge notes after plaintiff's right knee surgery indicate that she was only using a SCD (sequential compression device) for leg compression; there was no mention of a cane, crutches, or other assistive device.  The ALJ, however, did not cite any of this as the basis for her finding.  The court is not empowered to invent ad-hoc

justifications for the ALJ's conclusions, nor is the court authorized or inclined to scour

the administrative record looking for evidence that may support an ALJ's conclusory

finding.  See Lawrence v. Colvin, 2015 WL 5579432, at *5 (D. Colo. Sept. 23, 2015).

 Opinion of Altan Hardcastle.  Plaintiff further contends that the ALJ improperly

rejected the opinion of the treating mental health counselor, Mr. Hardcastle.  The ALJ

stated the following with respect to that opinion:

> An unacceptable medical source, Altan Hardcastle, a licensed clinical
> social worker from Veterans Affairs, wrote in August 2012 that the
> claimant was diagnosed with PTSD, depression, and panic attacks with
> agoraphobia (Exhibit 22F at 2).  He checked boxes that would lead to a
> finding that the claimant lacked the necessary aptitudes and abilities to
> engage in any type of work activity.  For example, Mr. Hardcastle
> indicated that the claimant had no useful ability to function in such areas
> as maintaining her attention for two-hour segments, complete a normal
> workday and workweek, interact appropriately with the public, or use
> public transportation (Exhibit 22F at 4-5).  In addition, he indicated that the
> claimant had marked limitations in maintaining social functioning,
> concentration, persistence, or pace (Exhibit 22F at 6).  Little weight is
> given to Mr. Hardcastle's assessment.  He, too, seems to have relied quite
> heavily on the subjective report of symptoms and limitations provided by
> the claimant, and seemed to uncritically accept as true most, if not all, of
> what the claimant reported.  In addition, he commented that the claimant's
> alcohol use made her psychiatric symptoms worse.

(Docket No. 11-2 at 31).

 Plaintiff notes the following with respect to Mr. Hardcastle's opinion.  He opined

that plaintiff would be seriously limited in eight areas of mental functioning, namely,

remember work-like procedures, maintain regular attendance and be punctual within

customary tolerances, sustain an ordinary routine without special supervision, make

simple work-related decisions, perform at a consistent pace without an unreasonable

number and length of rest periods, carry out detailed instructions, and set realistic goals

or make plans independently of others.  (AR 409-10).  In addition, Mr. Harcastle opined

that plaintiff was unable to meet competitive standards in seven areas of mental

functioning, namely, work in coordination with or proximity to others without being

unduly distracted, accept instructions and respond appropriately to criticism from

supervisors, get along with others without distracting them or exhibiting behavioral

extremes, respond appropriately to changes in a routine work setting, deal with normal

work stress, understand and remember detailed instructions, and deal with stress of

semiskilled and skilled work.  (AR 409-10).  Furthermore, Mr. Hardcastle opined plaintiff

is markedly limited in the broad areas of social functioning and maintaining

concentration, persistence, or pace and would miss more than four days per month due

to her mental health impairments.  (AR 411-12).  Plaintiff further notes that the ALJ gave

Mr. Hardcastle's opinion little weight because he "relied quite heavily on the subjective

report of symptoms and limitations provided by the claimant, and seemed to uncritically

accept as true most, if not all, of what plaintiff reported."  (AR 30).  Plaintiff contends that

this finding is simply not supported by substantial evidence in the record.  She asserts

there is noting in Mr. Hardcastle's treatment records or his opinion of limitations to

suggest that he relied quite heavily on plaintiff's subjective reports of symptoms.

Plaintiff notes that while an ALJ could reject a treating source's opinion if it were based

solely upon plaintiff's subjective complaints, she asserts that such a conclusion fails

unless supported by evidence in the record.  Here, she asserts the ALJ improperly and

without supporting evidence speculated that Mr. Hardcastle's opinion was based solely

upon subjective complaints.  Further, she contends that even if he relied to some extent

upon her subjective findings, that is not a reason to reject his opinion.   (Docket No. 14

at 44) (citing Thomas v. Barnhart, 147 Fed. Appx. 755, 759 (10th Cir. 2005) ("The

practice of psychology is necessarily dependent, at least in part, on a patient's

subjective statements.  A psychological opinion need not be based on solely objective

'tests'; those findings 'may rest on observed signs and symptoms or on psychological

tests.'")).  Plaintiff contends that the ALJ erred in rejecting the opinion of the only

treating source to offer an opinion and the only source, period, to offer a functional

assessment of plaintiff's limitations, without a proper basis in substantial evidence.

In response, the Commissioner correctly notes that only acceptable medical

sources, such as physicians, psychiatrists, and psychologists, who have seen a

claimant with sufficient frequency and duration, can be treating sources.  See 20 C.F.R.

§§ 404.1502, 404.1513(a).  Mr. Hardcastle, however, does not qualify as such a

"treating source" as he was just a therapist who met with plaintiff approximately once a

month between May and August 2012.  Instead, such a therapist falls under "other

medical sources" whose opinions the ALJ may evaluate using the same six criteria for

evaluating acceptable medical source opinions.  20 C.F.R. § 404.1513(d).

Nevertheless, the difficulty here, as noted by plaintiff, is that Mr. Hardcastle was the only

medical source to offer a detailed RFC regarding plaintiff's non-exertional limitations.  In

the Response Brief (Docket No. 19 at 12-13) the Commissioner details observations

made by Mr. Hardcastle in his reports, i.e., that plaintiff was alert and attentive, had a

normal rate and rhythm of speech, had normal thought processes, had average

knowledge, good insight, good judgment, and intact memory.  The fact remains,

however, that the ALJ did not mention any of this information in her analysis of Mr.

Hardcastle's assessment.  Mr. Hardcastle's assessment is intertwined with the basis for

the remand set forth below regarding plaintiff's RFC.  On remand the Commissioner

14

should provide a more detailed analysis of the limitations opined by Mr. Hardcastle.

**Plaintiff's RFC.**   A claimant's RFC is:

> is what the claimant is still functionally capable of doing on a regular and
> continuing basis, despite his impairments: the claimant's maximum
> sustained work capability. The decision maker first determines the type of
> work, based on physical exertion (strength) requirements, that the
> claimant has the RFC to perform. In this context, work existing in the
> economy is classified as sedentary, light, medium, heavy, and very heavy.
> To determine the claimant's "RFC category," the decision maker assesses
> a claimant's physical abilities and, consequently, takes into account the
> claimant's exertional limitations (i.e., limitations in meeting the strength
> requirements of work). . . .
>
> If a conclusion of "not disabled" results, this means that a significant
> number of jobs exist in the national economy for which the claimant is still
> exertionally capable of performing. However, . . . [t]he decision maker
> must then consider all relevant facts to determine whether the claimant's
> work capability is further diminished in terms of jobs contraindicated by
> nonexertional limitations.
>
> . . .
>
> Nonexertional limitations may include or stem from sensory
> impairments; epilepsy; mental impairments, such as the inability to
> understand, to carry out and remember instructions, and to respond
> appropriately in a work setting; postural and manipulative disabilities;
> psychiatric disorders; chronic alcoholism; drug dependence; dizziness;
> and pain. . . .

Williams, 844 F.2d at 751-52.  In deciding that plaintiff is capable of making a successful

adjustment to other work that exists in significant numbers in the national economy, the

ALJ has to determine plaintiff's RFC based on all the relevant medical and other

evidence in the case record.  RFC determinations are for the ALJ to make "based on

the entire case record, including the objective medical findings and the credibility of the

claimant's subjective complaints."  Poppa v. Astrue, 569 F.3d 1167, 1170-71 (10th Cir.

2009).  See 20 C.F.R. § 404.1546 (providing ALJ is responsible for assessing RFC).

15

Here, as noted above, the ALJ found that the plaintiff has the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that she can stand or walk up to four hours, sit up to six hours, and can occasionally climb stairs and ramps, but never climb ladders, ropes, or scaffolding.  In addition, she can occasionally kneel and crouch, frequently balance and stoop, but never crawl.  Furthermore, she should not be exposed to extreme cold or hazards, such as moving machinery and unprotected heights.  Also, she retains the abilities to engage in simple, routine tasks requiring no interaction with the public.  (Docket No. 11-2 at 27-30).  Plaintiff makes two arguments concerning the ALJ's RFC finding.  First, she contends that it is not stated on a function-by-function basis.  Second, she contends it is not supported by VE testimony.

With regard to her first argument, plaintiff notes the RFC finding limiting her to simple, routine tasks, as well as the hypothetical question posited to the VE limiting her to "essentially [] unskilled work."  (AR 62).  She further notes that at Step Three of the sequential evaluation process, the ALJ concluded that plaintiff has mild-to-moderate limitations in maintaining concentration, persistence, and pace (AR 25) and then stated that the RFC finding "reflects the degree of limitation the undersigned as found in the 'paragraph B' mental function analysis."  Plaintiff contends that the problem with reducing her to unskilled work is that the RFC finding is not stated on a function-by-function basis and does not properly account for her specific mental health limitations.  She asserts that a limitation to unskilled work accounts only for "issues of skill transfer, not impairment of mental functions-which 'are not skills but, rather, general prerequisites for most work at any skill level.'" (Docket No. 14) (quoting <u>Chapo v. Astrue</u>, 682 F.3d

1285, 1290 n.3 (10th Cir. 2012); Craft v. Astrue, 539 F.3d 668, 677-78 (7th Cir. 2008)).

She asserts that "'while there may be circumstances in which a particular mental limitation could be so obviously accommodated by a reduction in skill level that particularized vocational evidence addressing that limitation might be dispensed with, that is clearly not the case here.  Indeed, deficiencies in concentration like plaintiff's may well be especially disruptive of production, and perhaps even physically dangerous to the claimant and/or her coworkers, in the kinds of repetitive tasks typically involved in unskilled work.  In short, the tacit premise in the ALJ's analysis, i.e., that a cognitive or emotional impairment may be functionally equated with the lack of a skill, as that term is employed in the Secretary's regulation, is wrong.'" (Docket No. 14 at 32-33) (quoting Wayland v. Chater, 1996 WL 50459, at *2 (10th Cir. Feb. 7, 1996)).  Plaintiff also claims that SSR 85-15 also recognizes this disparity between mental aptitude and skill level:

> Because response to the demands of work is highly individualized, the skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job.  A claimant's condition may make performance of an unskilled job as difficult as an objectively more demanding job.

SSR 85-15.  Plaintiff contends that the ALJ erred in failing to obtain proper VE testimony to support her finding of non-disability, especially considering the ALJ made her finding of non-disability at Step Five of the sequential evaluation process, where the burden of proof had shifted to the Commissioner.

This court agrees with the plaintiff and finds that the ALJ did not adequately explain her RFC findings regarding plaintiff's non-exertional impairments.  At Step Two, the ALJ found that the plaintiff's severe impairments included an affective disorder and an anxiety disorder.  (Docket No. 11-2 at 24).  Furthermore, when considering whether

plaintiff had a Listed Impairment, the ALJ stated that plaintiff had mild to moderate

difficulties in concentration, persistence, or pace (Docket No. 11-2 at 26).  The ALJ,

however, did not explain the connection between these impairments and limitations and

her conclusory RFC findings limiting plaintiff to unskilled work and simple, routine tasks

requiring no interaction with the public.  Given the lack of any analysis by the ALJ, it is

impossible for this court to determine whether the ALJ's RFC assessment concerning

plaintiff's non-exertional impairments is supported by substantial evidence.  See

Crowder v. Colvin, 561 Fed. Appx. 740, 745 (10th Cir. Apr. 10, 2014); Jones v. Colvin,

2015 WL 5579435, at *6 (D. Colo. Sept. 22, 2015).  Therefore, a remand is warranted.

Plaintiff assigns further error to the ALJ's RFC finding, claiming that such finding

is not supported by the VE testimony.  She again notes that the ALJ found plaintiff can

perform light work but with only four hours of standing or walking and six hours of

sitting.  (AR 26).  Plaintiff claims that the problem with this finding is that light work

requires an individual to be standing most of the day, 20 C.F.R. § 404.1567(b), SSR 83-

14.  She asserts the VE's testimony establishes that the ALJ's finding is not the full

range of light work but rather falls between light and sedentary work.  According to the

VE, this is because the sitting limitation of six hours corresponds to sedentary work.

Plaintiff argues that whether the ALJ's RFC finding limits plaintiff to sedentary versus

light work is critical to her case because she turned fifty years old in 2010, and the Grid

directs a finding of disability at age fifty for a person limited to sedentary work, unless

she has skills that are transferable into sedentary jobs.  Grid 201.14.  Here, according to

plaintiff, the ALJ stated there are no transferable skills because she limited plaintiff to

unskilled work.  (AR 26).  Therefore, plaintiff contends that if the ALJ's finding allows for

Case 1:14-cv-01130-MJW   Document 29   Filed 09/29/15   USDC Colorado   Page 18 of 19

only sedentary jobs, plaintiff would be declared disabled at age fifty under the Grid.

Plaintiff acknowledges that the lifting limitation in the hypothetical question posed to the VE exceeds the lifting requirements of sedentary work, while the standing and sitting limitations are below that required of light work.  Therefore, she states the ALJ's finding falls somewhere between the sedentary and light exertional categories, as verified by the VE.  (AR 63).  Plaintiff, however, contends that the ALJ did not follow the Commissioner's policy for determining whether a person is disabled when the exertional capacity falls between two Grid rules that direct opposition conclusions.  She notes that VE assistance is advisable for these types of cases, but that is precisely what the ALJ did here - she sought the assistance of a VE, which plaintiff acknowledges.  In fact, she notes that the VE testified that he could have given the ALJ "directly sedentary positions" but instead went with light jobs that "have a sit, stand option" and in response to the ALJ's hypothetical question identified three jobs which could be performed while sitting for six hours per day.  Plaintiff, however, asserts that the VE clearly meant that plaintiff could perform jobs characterized in the Dictionary of Occupational Titles ("DOT") as light, but only if plaintiff could perform them in a sedentary fashion.  (AR 64).  Plaintiff contends that this is inconsistent with the definition of light work contained in the DOT.

She asserts the ALJ's RFC finding is therefore sedentary, or at most "little more than the occupational base" for sedentary work, and justifies a finding of disabled under the Grid at age fifty.  The court does not agree with the plaintiff's analysis of the ALJ's RFC finding and the VE's testimony.  In any event, having found reversible error above, the court need not address plaintiff's argument here any further.

19

**CONCLUSION**

Based upon the findings above, a remand to the Commissioner for further proceedings is warranted.  The court expresses no opinion about the ALJ's ultimate determination as to whether the plaintiff is disabled within the meaning of the Act.

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the Commissioner's decision is **REVERSED** and **REMANDED** to the Commissioner for further proceedings consistent with this Order.  It is

**FURTHER ORDERED** that plaintiff is awarded costs pursuant to Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1.


Date:  September 29, 2015             s/ Michael J. Watanabe
       Denver, Colorado              Michael J. Watanabe
                                     United States Magistrate Judge